| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> **Caption in compliance with D.N.J. LBR 9004-2(c)** <br><br> **McCARTER & ENGLISH, LLP** <br> Charles A. Stanziale, Jr. <br> Eduardo J. Glas <br> Clement J. Farley <br> Four Gateway Center <br> 100 Mulberry Street <br> Newark, New Jersey 07102 <br> Telephone:  (973) 622-4444 <br> Facsimile:   (973) 624-7070 <br> E-Mail:  cstanziale@mccarter.com <br>            eglas@mccarter.com <br>            cfarley@mccarter.com <br><br> *Counsel to the Chapter 11 Trustee* | |
| In Re: <br><br> SOLOMON DWEK, *et al.*[1] <br><br>                     Debtors. | Lead Case No.:  07-11757 (KCF) <br> (Jointly Administered) <br> Chapter 11 <br><br> Judge:  Kathryn C. Ferguson |

---

[1] The jointly administered estates include: Solomon Dwek, Case No. 07-11757 (KCF); 10 Neptune, LLC, Case No. 07-11974 (KCF); SEM Realty Associates LLC, Case No. 07-11976 (KCF); Deal Golf, LLC, Case No. 07-11982 (KCF); Dwek Trenton Gas, LLC Case No. 07-12794 (KCF); Neptune Gas, LLC, Case No. 07-12796 (KCF); Route 33 Medical, LLC, Case No. 07-12798 (KCF); 1111 Eleventh Avenue, LLC, Case No. 07-12799 (KCF); Dwek North Olden, LLC, Case No. 07-12800 (KCF); Dwek State College, LLC, Case No. 07-12802 (KCF); 1631 Highway 35, LLC, Case No. 07-16041 (KCF); 167 Monmouth Road, LLC, Case No. 07-16045 (KCF); 2100 Highway 35, LLC, Case No. 07-16048 (KCF); 230 Broadway, LLC, Case No. 07-16049 (KCF); 264 Highway 35, LLC, Case No. 07-16052 (KCF); 374 Monmouth Road, LLC, Case No. 07-16053 (KCF); 55 North Gilbert, LLC, Case No. 07-16054 (KCF); 601 Main Street, LLC, Case No. 07-16055 (KCF); 6201 Route 9, LLC, Case No. 07-16057 (KCF); Aberdeen Gas, LLC, Case No. 07-16058 (KCF); Bath Avenue Holdings, LLC, Case No. 07-16060 (KCF); Belmar Gas, LLC, Case No. 07-16061 (KCF); Berkeley Heights Gas, LLC, Case No. 07-16062 (KCF); Brick Gas, LLC, Case No. 07-16064 (KCF); Dover Estates, LLC, Case No. 07-16065 (KCF); Dwek Gas, LLC, Case No. 07-16066 (KCF); Dwek Hopatchung, LLC, Case No. 07-16067 (KCF); Dwek Income, LLC, Case No. 07-16068 (KCF); Dwek Ohio, LLC, Case No. 07-16069 (KCF); Dwek Pennsylvania, LP, Case No. 07-16071 (KCF); Dwek Wall, LLC, Case No. 07-16072 (KCF); Dwek Woodbridge, LLC, Case No. 07-16073 (KCF); Kadosh, LLC, Case No. 07-16074 (KCF); Lacey Land, LLC, Case No. 07-16075 (KCF); Monmouth Plaza, LLC, Case No. 07-16076 (KCF); P & Y Holdings, LLC, Case No. 07-16077 (KCF); Sugar Maple Estates, LLC, Case No. 07-16078 (KCF); West Bangs Avenue, LLC, Case No. 07-16079 (KCF); Beach Mart, LLC, Case No. 07-16104 (KCF); Seven Broad, LLC, Case No. 07-17124 (KCF); Dwek Apartments, LLC, Case No. 07-18315 (KCF); Dwek Raleigh, LLC, Case No. 07-18316 (KCF); Greenwood Plaza Acquisitions, LLC, Case No. 07-18317 (KCF); Sinking Springs II, LP, Case No. 07-18318 (KCF); Sinking Springs, LP, Case No. 07-18320 (KCF); Neptune Medical, LLC, Case No. 07-18766 (KCF); Bridgeton Building, LLC, Case No. 07-19629 (KCF); Dwek Properties, LLC, Case No. 07-20939 (KCF); WLB Center, LLC, Case No. 07-21752 (KCF); Dwek Branches, LLC, Case No. 07-22035 (KCF); Dwek Assets, LLC, Case No. 07-22036 (KCF); Asbury Gas, LLC, Case No. 07-22632 (KCF); Jemar Enterprises, LLC, Case No. 07-22633 (KCF); Melville Dwek, LLC, Case No. 07-22634 (KCF); Newport WLB, LLC, Case No. 07-22635 (KCF); Red Bank Gas, LLC, Case No. 07-22636 (KCF); WLB Highway, LLC, Case No. 07-22638 (KCF); Belmont Properties, LLC, Case No. 07-22898 (KCF); Tinton Falls Land, LLC, Case No. 07-23872 (KCF); and Copper Gables, LLC, Case No. 07-24829 (KCF), Dwek Homes, LLC, Case No. 07-24832 (KCF); Myrtle Avenue Land, LLC, Case No. 07-24835 (KCF), Dwek Wall Gas, LLC, Case No. 07-24836 (KCF); Grant Avenue Estates, LLC, Case No. 07-24837 (KCF), Neptune City Stores, LLC, Case No. 07-24839 (KCF); 170 Broad, LLC, Case No. 07-24922 (KCF); Dwek Land, LLC, Case No. 07-25349 (KCF); Dwek Motors, LLC, Case No. 07-25350 (KCF); Waretown Shops, LLC, Case No. 07-25668 (KCF), Monmouth Consulting Services, LLC, Case No. 07-25913 (KCF); and Monmouth Road Brokers, LLC, Case No. 07-27357 (KCF).

| | |
|---|---|
| CHARLES A. STANZIALE, JR., as Chapter 11 Trustee of Solomon Dwek and SEM Realty Associates, LLC,<br><br>              Plaintiff,<br><br>   vs.<br><br>ENCHANTE ACCESSORIES, INC. and EZRA ERANI,<br><br>              Defendants. | Adv. Pro. No. _____ |

**ADVERSARY COMPLAINT BY CHARLES A. STANZIALE, JR., AGAINST DEFENDANTS ENCHANTE ACCESSORIES, INC. AND EZRA ERANI**

Plaintiff Charles A. Stanziale, Jr., as Trustee of Solomon Dwek and SEM Realty Associates, LLC, by and through his counsel, McCarter & English, LLP, by way of Complaint against defendants Enchante Accessories, Inc. and Ezra Erani (collectively, the "Ponzi Participant"), hereby alleges:

## PARTIES

1. Plaintiff Charles A. Stanziale, Jr. ("Stanziale" or the "Trustee"), is the Court approved Chapter 11 trustee of, among others, debtors Solomon Dwek ("Dwek") and SEM Realty Associates, LLC ("SEM").

2. Defendant Ezra Erani, on information and belief, resides at 801 Avenue 1, Brooklyn, New York 11230. Defendant Enchante Accessories, Inc., on information and belief, is a corporation with a principal place of business at 4 East 34th Street, New York, New York 10016. The Ponzi Participant invested funds and obtained transfers from SEM that are voidable, as set forth more fully below.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Federal Rule of Bankruptcy Procedure 7001(1), (2), (7) and (9). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), & (0).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## I. BACKGROUND

### A. Case Filings and Appointment of Trustee

5. On February 9, 2007, several creditors of Dwek filed an involuntary petition for relief (Case No. 07-11757 KCF) (the "Dwek Bankruptcy") under Chapter 7 of title 11 of the United States Bankruptcy Code ("Bankruptcy Code" or "Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

6. On February 13, 2007, SEM filed a voluntary petition for relief under Chapter 11 of the Code in the Bankruptcy Court (Case No. 07-11976 KCF) (the "SEM Bankruptcy").

7. At all times relevant, Dwek managed and controlled SEM.

8. On February 22, 2007, on motion by Dwek, the Dwek Bankruptcy was converted to a case under Chapter 11 of the Bankruptcy Code.

9. On February 22, 2007, the SEM Bankruptcy was administratively consolidated with the Dwek Bankruptcy.

10. On March 2, 2007, the Bankruptcy Court entered an Order approving the appointment of Stanziale as the Trustee in, among others, the Dwek Bankruptcy and the SEM Bankruptcy.

### B. The Ponzi Scheme

11. At all times relevant, Dwek engaged in a course of conduct wherein he received investment funds from numerous individuals and entities ("Investors") with a promise of a guaranteed return in a specified period of time.

12. At all times relevant, Dwek also obtained unsecured loans from at least one individual banking professional and several financial institutions ("Unsecured Lenders") based

on Dwek's representations that Dwek was going to utilize the proceeds to, among other things, purchase real estate.

13. At all times relevant, Dwek also obtained personal loans from financial institutions and other individuals and entities ("Wrap Mortgagees") that were secured by second, third, or fourth mortgages on properties owned by limited liability companies in which Dwek was a sole member or owned less than all membership interests.

14. At all times relevant, Dwek represented to the Wrap Mortgagees that the proceeds from the loans would be used to, among other things, purchase real properties.

15. At all times relevant, on numerous instances, Dwek misrepresented to Investors, Unsecured Lenders and Wrap Mortgagees that Dwek had secured contracts to purchase certain real properties at a set price and had simultaneously secured contracts to sell those same properties to a fictitious third party at a set price.

16. In other instances, Investors, Unsecured Lenders and Wrap Mortgagees were not informed which properties were being acquired or maintained with the funds, or the source of the funds used to repay Investors, the Unsecured Lenders or the Wrap Mortgagees.

17. Virtually all of the funds received from Investors, Unsecured Lenders and Wrap Mortgagees were commingled in the SEM Account and were not devoted to a specific investment or property.

18. Dwek utilized a portion of the proceeds that he received from Investors, Unsecured Lenders and Wrap Mortgagees to purchase real estate, to donate to charitable religious organizations, to improve real estate, or to fund operating shortfalls on properties (e.g., properties that did not generate sufficient income to cover carrying costs including, but not limited to, mortgage debt service, insurance, real estate taxes, maintenance fees and management

fees) that he owned individually or by and through limited liability companies that he owned in whole or in part.

19. Dwek utilized an overwhelming majority of the proceeds that he received from new Investors, Unsecured Lenders and Wrap Mortgagees to repay previous Investors their original investments plus significant fictitious profits.

20. In many instances, Dwek did not sign any document in favor of Investors evidencing their investments, their promised returns or the date of the promised returns, and did not provide specific information as to how the funds were utilized in order to obtain the fictitious profits.

21. In many instances, Investors received their principal investments and significant fictitious profits within months of their investments. Some of the Investors received fictitious profits of between 20% and 50% annualized, at the expense of subsequent Investors, Unsecured Creditors and Wrap Mortgagees.

22. Dwek was able to raise money from new Investors by delivering false profits to earlier Investors and creating an illusion that he was a successful, philanthropic real estate mogul who delivered incomparable investment returns.

23. At all times relevant, in order to create the perception that he was a philanthropist, Dwek donated millions of dollars of fraudulently obtained funds to religious organizations.

24. At all times relevant, Dwek orchestrated a massive "Ponzi" scheme wherein he would utilize funds to repay Investors and carry the enterprise until it all collapsed in April 2006.

**C.    SEM's Fraudulent Transfers of Funds to the Ponzi Participant**

25. On information and belief, Dwek, through SEM, made one or more fraudulent transfers of funds obtained through the Ponzi scheme to the Ponzi Participant during the period between February 10, 2003, and February 9, 2007. The total of the payments by SEM to the

Ponzi Participant during that period amounted to at least Four Million Two Hundred Thousand ($4,200,000) Dollars (the "Avoidable Transfer"). At this time, Plaintiff lacks sufficient information to specify the total amount of money and other property that comprises all of the Avoidable Transfers. Plaintiff will seek leave to amend this Complaint when he obtains, through discovery, such additional information concerning the money and property that Dwek and/or SEM transferred to or for the benefit of the Ponzi Participant.

26. Although the Trustee lacks sufficient information to determine the total amount of money and property which constituted the Avoidable Transfer, the Avoidable Transfer included at a minimum the following transfers by Dwek through SEM to the Ponzi Participant made through SEM's PNC Bank Account, 80-1659-7311:

| DATE | AMOUNT | MANNER OF PAYMENT |
|---|---|---|
| 9/22/2005 | $1,590,000 | Wire Transfer |
| 9/30/2005 | $1,600,000 | Wire Transfer |
| 9/28/2005 | $1,010,000 | Wire Transfer |

27. During the relevant time period, the Ponzi Participant invested sums with Dwek through SEM, and received the Avoidable Transfer of $4,200,000.

28. The Ponzi Participant is a very successful business person and a sophisticated investor.

29. The Ponzi Participant has experience purchasing and selling commercial and residential real estate.

30. On information and belief, the Ponzi Participant conducted virtually no due diligence in connection with any investment with Dwek.

31. The Ponzi Participant did not request appraisals for any of the real estate that may have been the alleged subject of an investment.

32. The Ponzi Participant did not contact any closing attorney.

33. The Ponzi Participant did not attend any closings in connection with any real estate that may have been the alleged subject of an investment.

34. The Ponzi Participant did not receive a closing statement for the purchase and sale of any property.

35. The Ponzi Participant did not contact any alleged seller or buyer of any property that may have been the alleged subject of an investment.

36. The Ponzi Participant did not independently order any title report for any property that may have been the alleged subject of an investment.

37. The Ponzi Participant did not retain independent counsel in connection with any investment with Dwek.

38. On information and belief, the Ponzi Participant did not receive an IRS Form 1099 for any investment made with Dwek.

39. Had the Ponzi Participant conducted any form of due diligence prior to investing, the Ponzi Participant would have ascertained that a fraud was being perpetrated.

40. The Ponzi Participant knew or should have known that Dwek was not using funds advanced by the Ponzi Participant for the purchase and sale of real properties.

41. The Ponzi Participant was eager to profit in the extraordinarily large false profits promised by Dwek, and ignored all signs that would have provided notice that the Avoidable Transfer was fraudulent.

42. Notwithstanding the lack of documentation, the Ponzi Participant made the investment with Dwek and received the Avoidable Transfer.

43. On information and belief, the Ponzi Participant knew or should have known that Dwek had been engaged in a "Ponzi" scheme.

44. The Ponzi Participant, among others, enabled Dwek to continue the Ponzi scheme and was a direct participant in that scheme without regard to its effect on third parties.

45. As a result of the Ponzi Participant's receipt of the Avoidable Transfer, the Ponzi Participant received a benefit that was denied to other Investors.

## COUNT I

### FRAUDULENT TRANSFER PURSUANT TO
### CODE §§ 548(a)(1)(A) & 550

46. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 45 as if fully set forth herein.

47. During the period between February 10, 2003, and February 9, 2007, Dwek, through SEM, paid the Avoidable Transfer to the Ponzi Participant.

48. Dwek, through SEM, made the Avoidable Transfer to the Ponzi Participant with actual intent to hinder, delay and defraud SEM's creditors.

49. The Trustee is entitled to return of the Avoidable Transfer paid to the Ponzi Participant by SEM.

**WHEREFORE,** the Trustee demands that judgment be entered against the Ponzi Participant:

    a.    Ordering return of the Avoidable Transfer paid by SEM to the Ponzi Participant;

    b.    Impressing on these returned funds a trust for the benefit of the Trustee;

    c.    Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

# COUNT II

## FRAUDULENT TRANSFER PURSUANT TO
## CODE §§ 548(a)(1)(B) & 550

50. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 49 as is fully set forth herein.

51. SEM paid the Avoidable Transfer to the Ponzi Participant without receiving reasonably equivalent value in exchange.

52. As a result of SEM's payment of the Avoidable Transfer to the Ponzi Participant, SEM engaged in transactions for which the remaining assets of SEM were unreasonably small in relation to those transactions.

53. As a result of SEM's payment of the Avoidable Transfer to the Ponzi Participant, SEM incurred debt beyond its ability to pay as the debt became due.

**WHEREFORE,** the Trustee demands that judgment be entered against the Ponzi Participant:

    a.    Ordering return of the Avoidable Transfer paid by SEM to the Ponzi Participant;

    b.    Impressing on these returned funds a trust for the benefit of the Trustee;

    c.    Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT III

### FRAUDULENT TRANSFER PURSUANT TO
### CODE § 544 AND N.J.S.A. 25:2-25.a

54. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 53 as if fully set forth herein.

55. At all relevant times there was and is at least one or more creditor who held and hold unsecured claims against Dwek and/or SEM that were and are allowable under Bankruptcy Code §502 or that were not and are not allowable only under Bankruptcy Code §502(e).

56. SEM paid the Avoidable Transfer to the Ponzi Participant with actual intent to hinder, delay and defraud SEM's creditors.

57. The Trustee is entitled to return of the Avoidable Transfer paid to the Ponzi Participant by SEM.

**WHEREFORE,** the Trustee demands that judgment be entered against the Ponzi Participant:

    a. Ordering return of the Avoidable Transfer paid by SEM to the Ponzi Participant;

    b. Impressing on these returned funds a trust for the benefit of the Trustee;

    c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT IV

### FRAUDULENT TRANSFER PURSUANT TO
### CODE § 544 AND N.J.S.A. 25:2-25.b

58. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 57 as if fully set forth herein.

59. At all relevant times there was and is at least one or more creditor who held and hold unsecured claims against Dwek and/or SEM that were and are allowable under Bankruptcy Code §502 or that were not and are not allowable only under Bankruptcy Code §502(e).

60. Payment of the Avoidable Transfer to the Ponzi Participant was intended to, and SEM believed or reasonably should have believed that it would, incur debts beyond its ability to pay them as they became due. As a result of payment of the Avoidable Transfer to the Ponzi Participant, SEM was left with unreasonably small remaining assets in relation to the transactions.

61. SEM did not receive reasonably equivalent value in exchange for the Avoidable Transfer.

**WHEREFORE,** the Trustee demands that judgment be entered against the Ponzi Participant:

a. Ordering return of the Avoidable Transfer paid by SEM to the Ponzi Participant;

b. Impressing on these returned funds a trust for the benefit of the Trustee;

c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT V

**FRAUDULENT TRANSFER PURSUANT TO
CODE § 544 AND N.J.S.A. 25:2-27.a**

62. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 61 as if fully set forth herein.

63. At all relevant times there was and is at least one or more creditor who held and hold unsecured claims against Dwek and/or SEM that were and are allowable under Bankruptcy Code §502 or that were not and are not allowable only under Bankruptcy Code §502(e).

64. SEM did not receive reasonably equivalent value in exchange for payment of the Avoidable Transfer to the Ponzi Participant.

65. As a result of payment of the Avoidable Transfer to the Ponzi Participant by SEM, SEM incurred debt beyond its ability to pay as the debt became due.

66. At the time of payment of the Avoidable Transfer by SEM to the Ponzi Participant, SEM was indebted to other parties.

67. As a result of payment of the Avoidable Transfer to the Ponzi Participant, SEM became insolvent or was insolvent at the time of the transfers.

**WHEREFORE,** the Trustee demands that judgment be entered against the Ponzi Participant:

   a. Ordering return of the Avoidable Transfer paid by SEM to the Ponzi Participant;

   b. Impressing on these returned funds a trust for the benefit of the Trustee;

   c. Awarding reasonable attorneys' fees, costs of suit, interest, and such other and further relief the Court deems just and proper.

## COUNT VI

## ACCOUNTING

68. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 67 if fully set forth herein.

69. The Ponzi Participant was unjustly enriched and substantially profited at the expense of SEM and its creditors.

70. On information and belief, the Ponzi Participant, or other entities the Ponzi Participant controls or in which the Ponzi Participant has an interest, received payments, benefits and/or services from Dwek, SEM or one or more other entities managed and controlled by Dwek.

71. The Trustee is entitled to obtain a full and accurate description of the amount and use of funds, benefits or services conveyed directly or indirectly to or for the benefit of the Ponzi Participant, or other entities the Ponzi Participant controls or in which the Ponzi Participant has an interest, for the time period referenced in the Complaint relating to payments, benefits or services received from Dwek, SEM or one or more other entities managed and controlled by Dwek to assist the Trustee and the Court in the resolution of this controversy.

**WHEREFORE,** the Trustee is entitled to and demands an accounting of all funds, benefits and services received directly or indirectly by or for the benefit of the Ponzi Participant, including those paid to other entities which the Ponzi Participant control or in which the Ponzi Participant has an interest, with the date and amount of each transaction, the entity or individual(s) that withdrew or were paid the funds, and the ultimate use or disposition of the funds or other things of value for the time period referenced in the Complaint.

## COUNT VII

### TURNOVER OF ESTATE PROPERTY
### PURSUANT TO CODE § 542

72. Plaintiff hereby repeats and re-alleges each allegation set forth in paragraphs 1 through 71 as if fully set forth herein.

73. The Ponzi Participant was unjustly enriched and substantially profited at the expense of SEM and its creditors.

74. On information and belief, the Ponzi Participant, or other entities the Ponzi Participant controls or in which the Ponzi Participant has an interest, received payments, benefits and/or services from Dwek, SEM or one or more other entities managed and controlled by Dwek.

75.    Pursuant to 11 U.S.C. § 542, the Ponzi Participant is required to deliver to the Trustee, and account for, such payments, benefits and/or services, or the value of such benefits and services, received by the Ponzi Participant, or other entities the Ponzi Participant controls or in which the Ponzi Participant has an interest, from Dwek, SEM or one or more other entities managed and controlled by Dwek.

**WHEREFORE,** the Trustee demands judgment be entered that the Ponzi Participant shall deliver to the Trustee, and account for, such payments, benefits and services, or the value of such benefits and services provided for the Ponzi Participant's benefit or personal interest, including those paid to other entities which the Ponzi Participant controls or in which the Ponzi Participant has an interest, which were received from Dwek, SEM or one or more other entities managed and controlled by Dwek for the time period referenced in the Complaint.

Dated: February 3, 2009

                              **McCARTER & ENGLISH, LLP**

                            By:  /s/Charles A. Stanziale,, Jr.
                                  Charles A. Stanziale, Jr.
                                  Eduardo J. Glas
                                  Clement J. Farley
                                  Four Gateway Center
                                  100 Mulberry Street
                                  Newark, NJ 07102
                                  Telephone: (973) 622-4444
                                  Facsimile:  (973) 624-7070

                                *Counsel to the Chapter 11 Trustee*